UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24206-CIV-ALTONAGA/O'Sullivan

STEVEN GREEN,

    Plaintiff,
v.

STERICYCLE, INC.,

    Defendant.
_____/

**ORDER**

THIS CAUSE came before the Court on Defendant, Stericycle, Inc.'s ("Stericycle['s] or Defendant['s]") Motion to Dismiss Count II of the Complaint or, Alternatively, Motion for More Definite Statement ("Motion") [ECF No. 19], filed October 26, 2016. The Court has carefully reviewed the Motion; Complaint ("Compl.") [ECF No. 1-1]; Plaintiff Steven Green's ("Green['s]" or "Plaintiff['s]") Memorandum of Law in Opposition . . . ("Resp.") [ECF No. 27], filed November 21, 2016; Defendant's Reply . . . ("Reply") [ECF No. 30], filed November 30, 2016; and applicable law.[1] For the reasons explained below, the Court dismisses the claim asserted in Count II.

---

[1] The Court has disregarded the email communications [ECF No. 30–1] submitted by Defendant with its Notice of Supplemental Authority [ECF No. 30], as these are improper materials to consider on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, where the claim does not incorporate or rely on them and they may be subject to reasonable dispute.

CASE NO. 16-24206-CIV-ALTONAGA/O'Sullivan

## I. BACKGROUND

### A. Allegations of the Complaint[2]

Stericycle is a publicly traded company specializing in medical waste collection and disposal services; it posted $3 billion in revenue for 2015. (*See* Compl. ¶ 8). Green began working for Stericycle in October 2007 as a major account executive for the South Florida territory. (*See id.* ¶ 9). In May 2014, Green was promoted to National Account Manager of Port Services; was relocated to Stericycle's Latin America office on Brickell Avenue in Miami; and was told he would receive a compensation plan that included 4–6% commission payouts on new revenue deals, four months of commissions from his start date, and a percentage payout for renewal deals. (*See id.* ¶¶ 14, 15). When he failed to receive a plan in writing containing these compensation terms, Green was advised to create his own pay plan, which he did in August 2014 and which appears as the "Original Pay Plan" attached as Exhibit A to the Complaint. (*See id.* ¶¶ 17–22). The Original Pay Plan was approved, and Green received his commissions for the 2014 year based on and in accordance with the Original Pay Plan. (*See id.* ¶¶ 23, 25).

Although Green's commissions from closing deals thereafter continued to rise, Stericycle was not paying him those commissions and instead, "in an underhanded maneuver to cut Green's commissions moving forward," "contacted Green and proposed a modified pay plan that reduced his commission percentages." (*Id.* 5–6, ¶ 32). Green rejected an October 2015 modified pay plan, and so the parties continued working under the Original Pay Plan. (*See id.* ¶ 34). Undeterred, Stericycle once again unsuccessfully attempted to modify and reduce Green's commissions in January 2016. (*See id.* ¶ 37).

---

[2] On a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6), the allegations of the Complaint are accepted as true.

Despite Stericycle's delays in paying Green his commissions for 2015, he produced solid results for the company (*see id.* ¶ 39), and in December 2015 closed his largest deal with Carnival Corporation (*see id.* ¶¶ 42–51). Stericycle failed to pay Green any of his commissions owed on the Carnival deal. (*See id.* ¶ 54).

In June 2016, Green communicated to one of Stericycle's vice-presidents, Joel Perez ("Perez"), commissions owed to him from the 2015 fourth quarter to and including the 2016 second quarter, an amount totaling $535,043.13. (*See id.* ¶ 55). Green, Perez, and another Stericycle vice-president, Rich Daddario ("Daddario"), had a meeting, wherein Perez brought up another proposed pay plan (the "Proposed June 14, 2016 Pay Plan") that Daddario continued to change the terms of. (*See id.* ¶ 60). On June 16, 2016, Perez emailed Green approving his commissions for the fourth quarter of 2015 based on the Original Pay Plan. (*See id.* ¶ 61). On June 23, 2016, Daddario emailed Green yet another proposed compensation plan (the "Proposed June 23, 2016 Pay Plan"), for the first time including a cap on Green's commissions in the amount of $30,000 for renewals and $30,000 for new revenue. (*See id.* ¶ 62). This Proposed June 23, 2016 Pay Plan "was nothing more than a backdoor attempt to retroactively reduce Green's commissions in light of the Carnival Deal." (*Id.* ¶ 63). Green never approved it. (*See id.* ¶ 64).

At a July 13, 2016 meeting, Daddario and Perez threatened to force Green to "resign" unless he approved the Proposed June 23, 2016 Pay Plan and accepted a reduced amount for the Carnival Deal. (*See id.* ¶ 65). On August 1, 2016, Stericycle informed Green he was terminated. (*See id.* ¶ 78).

Green brings a four-count Complaint, alleging breach of contract in Count I; wage theft in violation of Chapter 22 ("Chapter 22" or the "Ordinance") of the Miami-Dade County

("County") Code of Ordinances ("Code") in Count II; unjust enrichment in Count III; and *quantum meruit* in Count IV. As stated, Stericycle only seeks dismissal of Count II. In that count, Green alleges Stericycle is an employer as defined in Section 22-2 of the Code. (*See id.* ¶ 93). In violation of Code Section 22-3, Stericycle committed wage theft by failing to pay wages due Green according to the agreed upon compensation plan and failing to pay the commissions within a reasonable time from the date on which Green performed the work for which the wages were compensation. (*See id.* ¶ 94). In addition to other recoverable damages, Green alleges he is entitled to liquidated damages as defined in Section 22-1, which equal twice the amount of wages Stericycle is found to have unlawfully failed to pay. (*See id.*). Green demands judgment for $509,400.45 in principal, plus liquidated damages of $1,018,800.90, together with interest and attorney's fees pursuant to Section 22-4 of the Code. (*See id.* 18).

Stericycle moves to dismiss Count II on the basis it fails to state a claim for relief under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, Stericycle seeks a more definite statement of the claim under Rule 12(e). While the Motion references all three rules, it only addresses Rules 8 and 12(b)(6) when explaining the applicable standards. In any event, the Court resolves the Motion under Rule 12(b)(6).

    **B.**    **Chapter 22 of the Miami-Dade County Code**

Whether Count II states a claim for relief depends on Chapter 22, or Ordinance 10-16,[3] of the Miami-Dade County Code of Ordinances. The Ordinance's content and structure are summarized here.

---

[3] According to Green, Ordinance 10-16 has a title that states in part, "Ordinance Establishing Chapter 22 of the Code . . . ; Prohibiting Wage Theft, Providing Administrative Procedures and Private Cause of Action for Wage Theft . . . ." In truth, that "title" is merely the synopsis given the Ordinance when it was presented to the Board of County Commissioners as part of its February 18, 2010 Board agenda. (*See* Resp. 11, Ex. 1 [ECF No. 27-1]). Indeed, as further evidence the copy of the Ordinance Plaintiff supplies with its Response is a draft document, it has an incorrect 5-year sunset provision, Section 22-8.

Chapter 22, titled, "Wage Theft," has as its declared policy, pursuant to the County's "exercise of its police power for the public safety, health and general welfare, to eliminate and prevent wage theft" by, among other things, "[e]liminating the underpayment or nonpayment of wages earned by persons working in the County" and "promoting business and economic development through the elimination of unfair economic competition." (Ord. 10-16, § 22-1 (alteration added)). To this end, Section 22-1 provides "Definitions," including a definition for threshold amount to mean $60.00 and liquidated damages to mean "twice the amount a respondent employer is found to have unlawfully failed to pay the complainant employee." (*Id.* §§ 22-2 (g), (h)). Section 22-3, titled "Wage theft violations," is the operative provision. It states:

> For any employer to fail to pay any portion of wages due to an employee, according to the wage rate applicable to that employee, within a reasonable time from the date on which that employee performed the work for which those wages were compensation, shall be wage theft; and such a violation shall entitle an employee, upon a finding by a hearing examiner appointed by Miami-Dade County *or by a court of competent jurisdiction* that an employer is found to have unlawfully failed to pay wages, to receive back wages in addition to liquidated damages from that employer.

(*Id.* § 22-3 (emphasis added)).

Section 22-4 is titled "Procedures for wage theft complaints." Subsection (1), titled "Filing wage theft complaints," addresses the filing of wage theft complaints and explains "for a complaint to be submitted to the County," the employee must allege no less than the threshold amount; it references "procedures set forth in an Implementing Order" and provides a one-year statute of limitations for filing with the County in the manner prescribed by the Implementing Order; and it requires the complaint set forth sufficient facts to identify the respondent and for

---

Regardless, a title is just one part of a statute or ordinance from which a court can mine drafters' intent, *see Bryant v. United States*, 768 F.3d 1378, 1384 (11th Cir. 2014); "alone," it does not provide a "sufficient basis" to deny a motion to dismiss, as Green claims (Resp. 11).

the County to determine allegations of wage theft and threshold amount have been made. (*Id.* §§ 22-4(1)(a)–(c)). Subsection (2), titled "Respondent," explains actions the County must take and findings it must make upon the filing of a wage theft complaint, such as the "ministerial act" of determining the complaint meets the Ordinance's requirements and service and notice requirements following that ministerial act that include notice of the "right to a due process hearing on the matter before a Hearing Examiner;" as well as giving "respondent" 20 days to file an "answer" with the County. (*Id.* §§ 22-4(2)(a)–(c)).

Subsection (3) of the Ordinance's procedures for filing wage theft complaints is titled, "Subpoenas," and it contains six sub-parts that address the Hearing Examiner and subpoenas for witnesses that should mimic subpoenas for witnesses in proceedings in the County Court of Miami-Dade County. (*See id.* §§ 22-4(3)(a)–(f)). Among these sub-parts are provisions allowing the Hearing Examiner or any party to seek enforcement of subpoenas in the County Court, and the County Court to order fines or imprisonment for non-compliance. (*See id.* §§ 22-4(3)(c)–(f)).

Section 22-4(4) is titled, "Applicability of Florida Rules of Civil Procedure." It incorporates Florida's rules regarding computing time and service of papers into the administrative procedure set up by the Ordinance. (*See id.* §§ 22-4(a)–(b)). Section 22-4(5), titled "Standards for Resolving Factual Disputes," essentially borrows from *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), and imposes an obligation upon the employer to keep accurate time records, describing the burden of proof should a "respondent" not keep accurate records of an employee's hours. (*See id.* §§ 22-4(5)(a)(i)–(iii)). If a respondent fails to meet the described burden, "the Hearing Examiner or any court, whichever is applicable, may award approximate damages based on the complainant's evidence." (*Id.* § 22-4(5)(b)).

Subsection (6), titled, "Conciliation," contains four sub-parts that describe "the policy of the County to encourage conciliation of charges." (*Id.* §§ 22-4(6)(a)–(d)). "If possible, a written conciliation agreement resolving the dispute . . . shall be executed prior to the referral" to the Hearing Examiner. (*Id.* § 22-4(6)(a)).

Subsection (7), titled, "Hearing before Hearing Examiner," contains six sub-parts of detailed procedures regarding the administrative hearing, including the County's obligation to appoint a Hearing Examiner, that Examiner's duties and powers, and for "appeal in a court of competent jurisdiction" of the Hearing Examiner's final determination. (*Id.* § 22-4(7)(a)). A party is allowed to appear with or without counsel, testimony is taken under oath, discovery is permitted in the manner provided by the Florida Rules of Civil Procedure, and the adjudicative final order must contain written findings of fact and conclusions of law. (*See id.* §§ 22-4(b)–(e)). Subsection (8) allows any party, including corporations, to be represented by non-lawyer advocates unless disallowed by the Hearing Examiner. (*See id.* § 22-4(8)). Last, subsection (9), titled, "Enforcement by private persons or by the State of Florida," explains should a complainant or the State bring an action in state or federal court for unpaid wages against respondent based upon the same facts as those found in the complaint to the County, the County dismisses the wage theft complaint with prejudice. (*See id.* §§ 22-4(9)(a), (b)).

Section 22-5 is titled "Enforcement of wage theft violations." Subsection (1) contains authority for the Hearing Examiner to order three times the amount of back wages the respondent employer is found to have unlawfully failed to pay, and requires the County to order the employer to pay the County costs. (*See id.* §§ 22-5(1)(a)–(b)). Subsection (2), titled "Failure to Comply with Initial Order," provides the County with additional remedies should the respondent employer fail to comply with the Hearing Examiner's order, and subsection (3) provides for

"Joint and Several Liability" where more than one respondent is responsible for unpaid wages. (*See id.* §§ 22-5(2)(a)–(c); (3)). Subsection (4) clarifies the Ordinance in no way limits or affects other rights an employee may have to recover for unpaid wages under common law or statute. (*See id.* § 22-5(4)). The Ordinance stands repealed 10 years from its effective date. (*See id.* § 22-8).

As noted, Chapter 22 references an "Implementing Order" – the equivalent of a county-level implementing regulation. Implementing Order 3-54 [ECF No. 20-6], titled "Wage Theft Program," generally tracks Chapter 22. In its section titled, "Scope," it states a finding of wage theft made "by a Hearing Examiner appointed by Miami-Dade County or by a court of competent jurisdiction" entitles an employee to back wages and liquidated damages. (*Id.* 2).[4] It states a "standard wage theft complaint" or form will be made available to aggrieved employees by the County Department of Small Business Development. (*Id.* 3). Last, and of relevance here, it states the "Hearing Examiner's final determination may be appealed to the appropriate court of law." (*Id.* 5).

The County provides a description of the Wage Theft Program on its official webpage. (*See* [ECF No. 20-3]). The County advises employees who believe they may be victims of wage theft to submit form wage theft complaint affidavits to the County Office of Consumer Protection ("Consumer Protection"). (*See id.* 2). Upon an assigned investigative analyst being satisfied the affidavit meets the Ordinance's minimum criteria of wage theft, formal notification is sent to the respondent employer, and the conciliation process thereafter ensues. (*See id.* 3). If conciliation is unsuccessful or the employer does not respond, Consumer Protection schedules

---

[4] The page references to the Implementing Order, the County's official website information concerning the Wage Theft Program, and the Resolution discussed here, are to the pagination provided by the Court's electronic case management system ("CM/ECF").

the case for hearing before the Hearing Examiner. (*See id.*). "Final Orders will be sent to all parties. A prevailing claimant may record a final order or seek post-judgment relief through the Miami Dade Civil Court System. At this stage, the County's administrative responsibilities" are considered "fulfilled and the file" is closed. (*Id.*). Additional details of "what to expect" at the wage theft hearing are provided on the County's official website, including references to the preponderance of the evidence standard and the right to subpoena witnesses. (*See id.* 3–4).

Recently, on March 18, 2014, the County passed a Resolution opposing proposed state legislation that would have the effect of preempting the County Wage Theft Ordinance. (*See* Resolution [ECF No. 20-12]). The Resolution's preamble describes Ordinance 10-16 as "prohibiting wage theft and providing administrative procedures and private causes of action for wage theft." (*Id.* 4). According to the Resolution, the Wage Theft Ordinance is "effective at expeditiously and resourcefully pursuing wage theft cases, while not imposing a significant burden on businesses and relieving the already congested court system from such claims." (*Id.* 7).

## II. STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

The scope of review on a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint. *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted). Nevertheless, the court "'may consider an extrinsic document if it is (1) central to the plaintiff's claim and (2) its authenticity is not challenged.'" *Id.* (quoting *SFM Holding, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (other citation omitted)). Consequently, at the Rule 12(b)(6) stage a court may take judicial notice of publicly filed documents. *See U.S.* ex rel. *Osheroff v. Humana Inc.*, 776 F.3d 805, 811 & n.4, 812 (11th Cir. 2015); *see also Pakootas v. Teck Cominco Metals, Ltd.*, 632 F. Supp. 2d 1029, 1032 (E.D. Wash. 2009) ("The court may properly consider matters of public record (e.g. pleadings, orders and other papers on file in another action pending in the court; records and reports of administrative bodies; or the legislative history of laws, rules or ordinances) as long as the facts noticed are not subject to reasonable dispute." (citation omitted)).

### III. DISCUSSION

Stericycle makes two principal arguments in its effort to secure a dismissal with prejudice of Count II. First, it asserts Section 22 does not provide Green with a private right of action, but rather creates an exclusive administrative procedure with appellate review in a court of competent jurisdiction. Second, it argues even if a claim under the Ordinance may be brought in

court in the first instance, Plaintiff fails to allege facts showing he is an employee or his wages are included in the permissible wage rate recoverable under the Ordinance. Because the Court agrees Chapter 22 creates an exclusive administrative procedure — including appeal in a court of law — rather than affords a private right of action that may be pursued in the first instance in the district court, it does not reach the second argument.

"Municipal ordinances are subject to the same rules of construction as are state statutes." *Rinker Materials Corp. v. City of N. Miami*, 286 So. 2d 552, 553 (Fla. 1973). "When interpreting a statute, it is axiomatic that a court must begin with the plain language of the statute." *BellSouth Telecomms., Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1187 (11th Cir. 2001) (internal quotation marks and citation omitted). Whether a statute, or in this case, a county ordinance, contains an express right of action is determined by the language of the ordinance itself. *See Alabama v. PC Gaming Auth.*, 801 F.3d 1278, 1294 (11th Cir. 2015) ("To determine whether a statute provides an express right of action, we look for an 'express provision granting [] a federal cause of action to enforce the provisions of that act." (alteration in original; quoting *Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1547 (11th Cir. 1985)). If an ordinance does not create an express right of action, the Court must then determine whether it implies a private right of action. This is a question of statutory construction. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979).

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "[T]he question of what remedies are available under a statute that provides a private right of action is 'analytically distinct' from the issue of whether

such a right exists in the first place." *Franklin v. Gwinnett Cty. Pub. Schools*, 503 U.S. 60, 65–66 (1992) (citation omitted).

Here, the Ordinance expressly creates a private right of action to redress wage theft in the County, as argued by Green. (*See* Resp. 11). Hence, there is no need for the Court to engage in the analysis required for determining "whether a private remedy is implicit in a statute not expressly providing one." *Cort v. Ash*, 422 U.S. 66, 78 (1975); *see also Alexander*, 532 U.S. 275. Rather, the narrower issue raised by Stericycle's Motion is what remedy the Ordinance provides — whether it is limited to the detailed, County-run administrative process or whether it encompasses the ability of pursuing relief in the district court, given the Ordinance's several references to "court." The Court agrees with Stericycle it is the former.

In determining that the Ordinance does not provide an employee the remedy of pursuing a private right of action in court in the first instance, the Court considers the language of the Ordinance as a whole and the legislative intent. All of the Ordinance's summarized provisions reflect a careful and detailed invitation for aggrieved Miami-Dade County employees to seek redress for "wage theft" through the County's administrative process, including County-handling of complaints, conciliation, and referral to Hearing Examiners; with rights of review and enforcement of subpoenas in a court of law. The Ordinance, much as the County ordinance at issue in *Francois v. Caribbean Airmail Inc.*, No. 01-CV-13901-1391-CIV-Jordan, 2002 WL 31465742, at *1 (S.D. Fla. June 18, 2002), "provides an extensive administrative scheme for the resolution of disputes, not including private causes of action. This scheme . . . is the only remedy that Miami-Dade County provided . . . ." (alterations added). It is similar to the County ordinance considered in *Calderon v. Form Works/Baker JV, LLC*, No. 13-CIV-21438-CMA (S.D. Fla. Dec. 12, 2013), Order 7 [ECF No. 49], where the undersigned declined to find a

12

private right of action to bring a claim in court, stating, "when an administrative process or scheme is provided by statute or ordinance, a court should be particularly hesitant to provide a private right of action when none is expressly granted." *Id.*; *see also Sailboat Pointe Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 08-61129-CIV, 2009 WL 248373, at *4 (S.D. Fla. Feb. 1, 2009) (citing *Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195, 198 (11th Cir. 1992)) (expressing reluctance to read a private right of action into a state statute where statute's plain language and state courts had not done so).

Admittedly, as noted by Green, the ordinances in *Francois* and *Calderon* did not contain references to "court" or "private right of action," terms found in Chapter 22. (*See* Resp. 15). These distinctions, however, are insufficient to compel a finding Chapter 22 provides a private remedy that an employee may pursue in court in the first instance. "In determining the meaning of the language used, the court must look not only to the words themselves but also to the context in which the language lies." *Chalfonte Condo. Apt. Ass'n, Inc. v. QBE Ins. Corp.*, 695 F.3d 1215, 1228 (11th Cir. 2012) (quoting *QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n, Inc.*, 94 So. 3d 541, 251 (Fla. 2012) (internal quotation marks and citation omitted)). But for the somewhat careless references to "court" found in the Ordinance's sections clearly designed to address the role of the County-furnished Hearing Examiner rather than to appeals or enforcement of subpoenas, there is nothing in the text of Chapter 22 from which one can deduce the County Commission intended to "congest" "the court system" with wage theft claims — including the recovery of liquidated damages — it created. (Resolution 7). Quite the contrary.

Chapter 22 creates a remedial procedure. Its text, as well as the Implementing Order's provisions, "create an elaborate and comprehensive . . . scheme that belies any . . . intent to create a private remedy" through court action. *Love v. Delta Air Lines*, 310 F.3d 1347, 1354

13

(11th Cir. 2002) (ellipses added). The reference to "court of competent jurisdiction" in the definition section, Section 22-3, stands out as surplusage in an otherwise comprehensive Ordinance that spells out to employee complainants and respondent employers how the County, by administering wage theft complaints, including attempting conciliation before appointing a Hearing Examiner, will redress wage theft.

The Ordinance requires a complaint for wage theft "be filed with the County." (Ord. 10-16, § 22-4(1)(c)). It allows parties, including corporations, to be represented by non-lawyers, which is contrary to law. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (citations omitted). The remaining references to "court" are in the Ordinance's provisions for the issuance and enforcement of subpoenas to facilitate the "due process hearing" before the Hearing Examiner (Ord. 10-16 § 22-4(2)(b)), the evidentiary burden placed on a respondent where inaccurate records are kept and allowance for the Hearing Examiner or "any court" to award approximate damages in such case (*id.* § 22-4(5)(b); for "enforcement" of a conciliation agreement (*id.* § 22-4(6)(c)); and in the requirement the County dismiss the administrative wage theft complaint should there be any "private action" or "enforcement action" addressing the same facts as are the subject of the administrative wage theft complaint (*id.* §§ 22-4(9)(a)(ii); (b)). In other words, should a private action raise the "same facts and allegations as the complainant employee's complaint to the County," the administrative complaint to the Count is "deemed withdrawn." (*Id.* § 22-4(9)(a)(i)). The Ordinance and Implementing Order allow for appeal of the Hearing Examiner's final determination "in a court of competent jurisdiction" (Ord. 10-16 § 22-4(7)(a)), or "to the appropriate court of law" (Implementing Order 5), resepectively.

Notwithstanding the careless reference to "finding" by "a court of competent jurisdiction" in the Ordinance's definition of wage theft violations, Section 22-3, the County's

14

intention to offer a comprehensive, inexpensive, and expeditious administrative process — administered by the County — to employee-victims of wage theft is clear. This intention is evident upon a careful reading of Chapter 22, the Implementing Order's provisions thereafter adopted, the official County webpage describing the Ordinance and the procedures employed by the named County department, and most recently in the Resolution opposing a proposed state law that would preempt the Ordinance. *See Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1232 (11th Cir. 2006) (noting, in construing ambiguous ordinance to avoid constitutional problems, court considers city's "own authoritative construction of the ordinance, including its implementation and interpretation and defer[s] to that construction so long as its interpretation is based on a permissible construction." (alteration added; internal quotation marks and citation omitted)). "[I]n the absence of strong indicia of contrary . . . intent," the Court is compelled to conclude the Commission "provided precisely the remedies it considered appropriate." *McDonald v. Southern Farm Bureau Life Ins. Co.*, 291 F.3d 718, 725 (11th Cir. 2002) (alteration added; internal quotation marks and citation omitted). Those did not include the present action for violation of Chapter 22.

## IV. CONCLUSION

Based on the foregoing analysis, the Court agrees with Defendant that Chapter 22 of the Miami-Dade County Code does not provide Green a remedy he is allowed to seek in the first instance in a court of law, and Count II fails to state a claim for relief. It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Count II of the Complaint or, Alternatively, Motion for More Definite Statement **[ECF No. 19]** is **GRANTED**.

CASE NO. 16-24206-CIV-ALTONAGA/O'Sullivan

**DONE AND ORDERED** in Miami, Florida this 15th day of December, 2016.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:   counsel of record